# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| Bernard Johnson ) | |
|       Plaintiff, ) | |
| ) | No. 15 C 1327 |
| v. ) | |
| ) | Judge Virginia M. Kendall |
| Thomas J. Dart, Robert Lyles, Officer A. Buscemi, ) | |
| Sergeant C. Moore, Nurse Mitchell, Nurse Cooper, ) | |
| Nurse Anderson, and Dr. Davis ) | |
| ) | |
|       Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Bernard Johnson sued the Defendants alleging that they violated his constitutional rights by exhibiting deliberate indifference to a hazardous prison condition which caused the Johnson harm and thereafter by failing to provide Johnson with adequate medical care. Additionally, Johnson alleges that Defendants acted pursuant to a practice or policy leading to his constitutional deprivations and harm. Defendants move to dismiss Plaintiff's allegations for failure to state a claim.[1] After accepting all well-pleaded allegations in the Second Amended Complaint as true and drawing all reasonable inferences in Plaintiff's favor, Defendants' motions to dismiss are granted in part and denied in part.

## BACKGROUND

This Court takes the following allegations from the Second Amended Complaint and treats them as true for the purposes of the Defendants' motions. *See Gillard v. Proven Methods Seminars, LLC*, 388 F. App'x 549, 550 (7th Cir. 2010).

---

[1] Defendants filed two motions to dismiss in this case. (*See* Dkt. No. 36; Dkt. No. 51.) The first motion to dismiss was in regards to allegations against Defendants Thomas Dart and Robert Lyles (*see* Dkt. No. 36) and the second was in regards to allegations against Sergeant C Moore and Officer A. Buscemi. (*See* Dkt. No. 51.) Given that many of the issues and arguments raised in both motions to dismiss are similar, the Court addresses both motions in its Opinion.

Johnson was a pretrial detainee held at the Cook County Detention Center ("CCDC") from March 21, 2013 through May 5, 2014. (Dkt. No. 27 at ¶¶ 3, 12.) On October 6, 2013, Plaintiff entered the shower area of S-House in CCDC. (*Id*. at ¶ 15.) Johnson noted that there were several unmarked pools of water at the entrance and that the lighting was poor. (*Id*. at ¶ 16.) He also saw that Officers Buscemi and Moore were present, but were engaged in conversations unrelated to work. (*Id*. at ¶ 20.) Johnson, who was morbidly obese and was taking medicine for his high blood pressure, slipped and fell upon entering the shower facility. (*Id*. at ¶¶ 13, 21.) He alleges that he sustained bodily injuries as a result of his fall and was unable to get up. (*Id*. at ¶ 22.) Johnson further alleges that Officers Buscemi and Moore, rather than assisting him to his feet, verbally abused, taunted, and laughed at him. (*Id*. at ¶¶ 26; 27.) Johnson, after getting up himself, asked the Officers to send him to the Dorm 2 dispensary or to Cermak Health Systems ("CHS"), to call the on-duty nurse, and to call for a "white shirt" (shift supervisor) to assist him. (*Id*. at ¶ 34.) However, the Officers failed take any of those actions. (*Id*.)

Later that day, Johnson described the accident, his injuries, and his history of high blood pressure to Nurse Mitchell. (*Id*. at ¶ 36.) Mitchell directed Johnson to fill out a health services form and told Johnson that he would be called to the dispensary for medication though he was. (*Id*. at ¶¶ 37, 38.) The next day, on October 7, 2013, Johnson raised the same concerns to Nurse Cooper, and also mentioned that he was experiencing rectal bleeding, blood in the shower, and blood on his sheets. (*Id*. at ¶ 39.) Cooper had him fill out a second health services form, but Johnson again did not receive any response from the dispensary. (*Id*. at ¶ 40.) On October 8, Johnson again raised the same issues to Cooper, who took his blood pressure but did not prescribe any medication or conduct additional tests before sending Johnson back to his cell,

despite noting that Johnson was likely in pain. (*Id*. at ¶ 41.) Johnson also saw Mitchell and Nurse Anderson that day but they informed him that there was nothing that they could do. (*Id*. at ¶ 42.) Mitchell told Johnson that he would call Johnson to the dispensary, but never did so. (*Id*.) Several days later, Mitchell and Anderson, after finding that Johnson's blood pressure was extremely elevated, each gave Johnson an ibuprofen tablet, but failed to provide any additional medical care. (*Id*. at ¶ 44.) Johnson continued to complain about his medical condition to Mitchell, Anderson, and Cooper, indicating that he was unable to sleep and was passing blood through his stool for the next weeks and months but received no response. (*Id*. at ¶ 45.) Johnson also continued to file health services requests during this period. (*Id*. at ¶ 46.) Johnson saw Dr. Davis in November 2013 and explained his symptoms, and Dr. Davis responded that if Johnson lost weight it would relieve stress on his body and prescribed Johnson ibuprofen without checking for rectal bleeding or ordering further tests. (*Id*. at ¶ 47.) Johnson saw Dr. Davis two more times in January and February 2014, but Dr. Davis did not follow up on Johnson's complaints. (*Id*. at ¶ 48.)

## **LEGAL STANDARD**

A complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face to survive a 12(b)(6) challenge. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A claim is plausible on its face when the complaint contains factual content that supports a reasonable inference that the defendant is liable for the harm. *Id.* The complaint should be dismissed only if the plaintiffs would not be entitled to relief under any set of facts that could be proved consistent with the allegations. *See Visiting Nurses Ass'n of Southwestern Indiana, Inc. v. Shalala*, 213 F.3d 352, 354 (7th Cir. 2000). In making the plausibility determination, the Court relies on its "judicial experience and common sense." *McCauley v. City of Chicago*, 671

F.3d 611, 616 (7th Cir. 2011) (quoting *Iqbal,* 129 S.Ct. at 1950). For purposes of this motion, this Court accepts all well-pleaded allegations in the complaint as true and draws all reasonable inferences in the non-movant's favor. *See Yeftich v. Navistar, Inc.*, 722 F.3d 911, 915 (7th Cir. 2013).

## DISCUSSION

**A.     Count I – Deliberate Indifference to a Hazardous Prison Condition**

In Count I, Johnson brings separate claims against Officers Moore and Buscemi, Superintendent Lyles, and Sheriff Dart.

1.     Officers Moore and Buscemi's Liability

Johnson alleges that Officers Moore and Buscemi displayed deliberate indifference to a hazardous prison condition – *i.e.* pools of water near the entrance of the shower area, inadequate lighting, and no warning signs – that caused him harm in violation of his Eighth Amendment rights.[2] The Eighth Amendment "protects prisoners from prison conditions that cause 'the wanton and unnecessary infliction of pain,'…including both hazardous prison conditions…and grossly inadequate medical care." *Pyles*, 771 F.3d at 408 (internal citations omitted). While the burden on the prisoner is a heavy one, "[i]n order to state a claim under the Eighth Amendment for deliberate indifference to a hazardous condition of confinement" Johnson need only allege that the Officers "deliberately ignored a prison condition that presented an objectively, sufficiently serious risk of harm." *Id*. at 409. In other words, Johnson must allege sufficient facts to support two determinations: first, that the conditions at issue were "sufficiently serious" from an objective standpoint, and second, that the Officers acted with deliberate indifference to

---

[2] As a pretrial detainee, Johnson is technically protected by the Fourteenth, rather than by the Eighth, Amendment. However, for the purposes of a § 1983 claim, as here, the constitutional analysis under the Fourteenth Amendment is the same as it would be under the Eighth Amendment. *Pyles v. Fahim,* 771 F.3d 403, 408 (7th Cir. 2014).

4

the condition, *i.e.* the Officers failed to take reasonable measures to address the condition despite subjectively knowing that the inmate faced a substantial risk of serious harm. *Townsend v. Fuchs*, 522 F.3d 765, 773 (7th Cir. 2008).

Defendants contend that Johnson has failed to state sufficient facts for both the objective and subjective prongs. In regards to the objective prong, however, the Court finds that it is plausible that the combination of the slippery floors outside of the shower area and the poor lighting was sufficient to meet the objective prong analysis, particularly at this stage of the litigation. Defendants argue that slippery floors and poor lighting are *de minimis* concerns that do not implicate the Constitution as a matter of law. Dkt. No. 51 at 5-7 (citing *Pyles*, 771 F.3d at 410 ("Federal courts consistently have adopted the view that slippery surfaces and shower floors in prison, without more, cannot constitute a hazardous condition of confinement.")).) However, there is no such hard and fast rule that a certain kind of condition or combination of conditions *per se* "falls below the minimum necessary for a successful conditions-of-confinement claim." *Dixon v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997) (providing that a condition that may not ordinarily violate the Eighth Amendment may nonetheless do so if in combination with other factors). Moreover, Defendants' citation to *Pyles* is unavailing as that Court noted that "slippery surfaces and shower floors in prison, *without more*, cannot constitute a hazardous condition of confinement." *Id.*, 771 F.3d at 410 (emphasis added). Here, Johnson has alleged more, *i.e.* that the poor lighting "made it difficult to detect where the standing water might be located." (Dkt. No. 44 at 4.) Brown's Complaint additionally indicates that there was a "lack of signage or warnings" regarding the hazard in that area. (Dkt. No. 27 at ¶ 21.) Based on the facts alleged in the Complaint, it is plausible that the combination of these factors – slippery floors, poor lighting, and a lack of signage or warnings – created a hazardous situation. While it is likely that

Johnson will be required to bring forth additional evidence in support of his position, such "proof comes later, not at the complaint stage." *Pyles*, 771 F.3d at 410.

Turning to the subjective prong, Defendants argue that the Officers' alleged inaction in regards the hazardous situation does not amount to deliberate indifference largely because Johnson failed to allege that "the Defendant Officers were on any kind of notice that there were pools of water in the shower area of Plaintiff's dorm." (Dkt. No. 51 at 8.) Indeed, it is the case that if the Officers did not know or perceive the significant risk, their failure to alleviate the condition could not be found to run afoul of the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 838 (1994) ("But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment."). Yet, based on the Complaint and Johnson's own briefing, *see* Dkt. No. 54 at 5, it is clear that the Officers were *near* or *in* the shower area both prior to and at the instant when Johnson fell. As such, taking into account all reasonable inferences in Johnson's favor, the Court infers that the Officers were both aware of the low lighting and the puddles of water, and thus were on notice of the hazardous situation. *See Yeftich*, 722 F.3d at 915. Defendants also argue that even if the Officers had knowledge, their inaction was not reckless in the criminal law sense as the Officers did not commit "an act so dangerous that [their] knowledge can be inferred *or* [indicate that the Officers] *knew of an impending harm easily preventable*." *Antonelli v. Sheahan*, 81 F.3d 1422, 1427 (7th Cir. 1996) (emphasis added). However, given that the Court infers that the Officers were aware of the low lighting and puddles of water, it is clear that the Officers knew of the impending harm presented by the combination of those two conditions. Further, Defendants' own analysis of the solution to the dangerous

6

condition, *i.e.* "a purported failure to grab a mop or change a light bulb," clearly indicates that the harm was easily preventable. (*See* Dkt. No. 56 at 4.)

    2.      Sherriff Dart and Superintendent Lyles' Liability

Johnson also alleges that Sheriff Dart and Superintendent Lyles showed deliberate indifference towards the hazardous prison condition and are responsible for permitting a policy or practice that allows officers to fail to address hazardous conditions.

Turning first to the deliberate indifference claim, Defendants contend that Johnson has again failed to allege sufficient facts to meet either the objective or subjective prongs of the Eighth Amendment analysis. (Dkt. No. 36 at 6-9.) As the Court has already found that Johnson meets the objective prong of the analysis *supra*, the Court turns to the subjective prong and finds that Johnson has failed to allege sufficient facts to support his allegation that either Dart or Lyles displayed deliberate indifference in this instance. As an initial matter, Johnson has failed to provide evidence to establish that either Dart or Lyles "were even aware of, let along deliberately indifferent to, the condition described in his Complaint." (Dkt. No. 36 at 7-8.) Unlike the Officers, who were present in the shower area, Johnson does not allege that either Dart or Lyles were anywhere near the scene of injury. In addition, and as the Defendants point out, Johnson does not allege that either Dart or Lyles had received prior complaints concerning slippery floors or bad lighting in that specific area. (Dkt. No. 36 at 7-8.)

Johnson, in an effort to rebut such a finding, refers to a US Department of Justice Report as evidence that Dart and Lyles had sufficient knowledge of the hazardous condition. (Dkt. No. 44 at 5-6.) While the Court may take judicial notice of the facts within the Report[3], even taking

---

[3] While the general rule is that "a court simply examines the allegations in the complaint to determine whether they pass muster," there exists a "narrow exception to this rule to permit a district court to take judicial notice of matters of public record without converting a motion for failure to state a claim into a motion for summary judgment." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997) (collecting cases).

7

into account the allegedly relevant facts, the Court does not find that a 2008 Report would provide sufficient notice to either Dart or Lyles of the hazardous condition at issue in this case. Such a finding, as Defendants point out in their briefing, would create an unreasonable situation in which officials could be held to have notice of a specific condition based on a generalized report that was published years prior. (Dkt. No. 50 at 4-5.) As such, the Court grants this aspect of the Defendants' motion to dismiss.[4]

Johnson also alleges that Dart is liable in his official capacity for "allowing a policy or practice to exist pursuant to which unreasonably dangerous conditions of the sort Johnson encountered in the shower area were permitted to exist." (Dkt. No. 27 at ¶ 18.) Under *Monell v. Department of Social Services of City of New York*, 436 U.S. 658, 690 (1978), to establish liability against Dart, Johnson must show that: (1) he suffered a deprivation of a federal right; (2) as a result of either an express municipal policy, widespread custom, or deliberate act of a decision-maker; which (3) was the proximate cause of his injury. *See Ovadal v. City of Madison, Wisconsin*, 416 F.3d 531, 535 (7th Cir. 2005); *Board of County Com'rs of Bryan County, Okl. v. Brown*, 520 U.S. 397, 404 (1997) ("[I]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also demonstrate that, through its *deliberate* conduct, the municipality was the "moving force" behind the injury alleged.); *see also Thomas v. Cook County Sheriff's Dept.*, 604 F.3d 293, 306 (7th Cir. 2009) ("the premise behind a § 1983 action against a government body is 'the allegation that official policy is *responsible* for the deprivation of rights.'") (emphasis in original). In addition, in order

---

[4] Johnson seems to have waived his allegation that Dart and Lyles are personally liable under Section 1983, *see* Dkt. No. 4 at ¶ 17, when he failed to address the issue in his Response to the Defendants' motion to dismiss. (Dkt. No. 44 at 4-6.) Indeed, failure to respond to an argument "results in waiver." *Bonte v. U.S. Bank, N.A.*, 624 F.3d 461, 466 (7th Cir. 2010). Even if Johnson preserved this argument, the Court holds that because Johnson has not sufficiently alleged that either Dart or Lyles were personally involved in the incident and that because there is no *respondeat superior* liability under Section 1983, Johnson has failed to state a claim of personal liability. *Hildebrandt v. Illinois Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003); *Perkins v. Lawson*, 312 F.3d 872, 875 (7th Cir. 2002).

for his *Monell* claims to succeed, Plaintiff must show that he suffered a constitutional injury. *See, e.g., Hunt ex rel. Chiovari v. Dart*, 754 F. Supp. 2d 962, 974 (N.D. Ill. 2010).

The Court holds that Johnson fails to state a claim under *Monell*. Based on his Complaint, Johnson has failed to allege sufficient facts to show that there was a policy or practice in action, that the policy was the moving force behind his constitutional deprivation, and further that the policy proximately caused his deprivation. First, aside from his own experience, Johnson has failed to provide any examples or even allegations, much less a series of violations, of other prisoners suffering a similar harm due to a policy or practice to provide inadequate showering facilities. *See Palmer v. Marion Cty.*, 327 F.3d 588, 596 (7th Cir. 2003) ("When a plaintiff chooses to challenge a municipality's unconstitutional policy by establishing a widespread practice, proof of isolated acts of misconduct will not suffice; a series of violations must be presented to lay the premise of deliberate indifference."). Second, even if he had alleged sufficient facts to show that such a policy plausibly existed, Johnson has brought forth no facts to support an inference that such a policy would have been the *moving force* behind his deprivation. *See Bryan County*, 520 U.S. at 407-08; *Thomas*, 604 F.3d at 306. Johnson's reliance on the DOJ Report does not remedy either of the above flaws. The DOJ Report, while noting issues within the CCJ, does not provide any support for the notion that a *policy or practice* exists that allows for inadequate facilities, and in particular inadequate shower areas lacking sufficient signage and lighting. Similarly, the Report does not indicate that such an alleged policy or practice is the moving force behind the various violations listed in the Report, much less the violation at issue in this case.

Therefore, the Court finds that Johnson has sufficiently stated a claim in regards to the Officers in Count I, and denies the Defendants' motion to dismiss. However, the Court grants the Defendants' motion to dismiss in regards to Sherriff Dart and Superintendent Lyles.

B.     **Count II – Deliberate Indifference to Medical Needs**

In his Complaint, Johnson brings separate claims against Sheriff Dart and Officers Moore and Buscemi related to their alleged deliberate indifference to his medical needs.

As an initial point, and as Defendants point out, *see* Dkt. No. 50 at 8, it seems that Johnson, by failing to respond to the motion to dismiss, waived his allegations that Sheriff Dart was responsible for some policy or practice that permits officers to fail to assist and verbally taunt detainees. *See Bonte*, 624 F.3d at 466 (failure to respond to an argument "results in waiver."). As such, the Court dismisses this aspect of Johnson's claim.

Moving to Officers Moore and Buscemi[5], Johnson alleges that the Officers violated his constitutional rights when, instead of assisting him when he fell, the Officers verbally abused, taunted, and laughed at him. (Dkt. No. 27 at ¶¶ 26, 27, 29.) Johnson further contends that the Officers failure to assist him aggravated his injuries, causing him additional harm in violation of the Eighth Amendment. (*Id.* at ¶ 28.) Similarly, in Count III, Johnson alleges that the Officers were deliberately indifferent when they failed to respond to his requests to call medical personnel. (*Id.* at ¶¶ 34-35.)

In order to state a claim of deliberate indifference to a serious medical need, Johnson must plead sufficient facts to meet both an objective and subjective component. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). "To satisfy the objective component, a prisoner must demonstrate that his medical condition is 'objectively, sufficiently serious.'" *Id.* (quoting

---

[5] Given the similar factual underpinnings and legal basis of the claims, the parties addressed the allegations against the Officers for deliberate indifference to Johnson's medical needs reflected Count II and III together. (*See, e.g.,* Dkt. No. 51 at 10-14; Dkt. No. 54 at 9.) As such, the Court considers both allegations here.

*Farmer v. Brennan*, 511 U.S. 825, 834 (1994) (internal quotations omitted)). "A serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention." *Id*. In order to meet the subjective component, Johnson must demonstrate that the Officers acted with a "sufficiently culpable state of mind." *Id*. (internal citations omitted). Johnson may meet this requirement by "show[ing] that the defendants knew of a substantial risk of harm to the inmate and disregarded the risk." *Id*. Finally, "a factfinder may conclude that the official knew of a substantial risk from the very fact that it was obvious." *Farmer*, 511 U.S. at 826. Defendants move to dismiss on the grounds that Johnson fails to meet either prong.

In regards to the objective prong, taking all pleaded facts to be true, the Court finds that Johnson has plead sufficient facts to meet his burden. Based on his Complaint, upon falling, Johnson, who was morbidly obese, was severe pain and was unable to get up under his own strength. (Dkt. No. 27 at ¶¶ 13, 25.) Moreover, the fact that Johnson then experienced rectal bleeding as a result of the fall, he meets the requirements of an objectively serious medical condition. *See, e.g., Conley v. Thurmer*, No. 11-C-0308, 2011 WL 2746176, at *4 (E.D. Wis. July 14, 2011) (finding that Plaintiff "sufficiently alleged serious injuries (the rectal bleeding and heart attack)…"); *Mack v. Nwaobasi,* No. 12-CV-0986-MJR-SCW, 2015 WL 264708, at *3 (S.D. Ill. Jan. 20, 2015) (parties not disputing that Plaintiff's rectal bleeding constituted a serious medical condition); *Jackson v. Fahim*, No. CIV. 12-720-GPM, 2013 WL 4760949, at *4 (S.D. Ill. Sept. 4, 2013) (same). In addition, at this stage of the proceeding, it is plausible that the Officers' failure to assist Johnson to his feet exacerbated the situation as he may have injured himself further while attempting to get up on under his own strength.

Defendants' counterarguments are unavailing. First, Defendants argue that Johnson claims that he suffered from rectal bleeding and great pain, but fails to provide any specific details regarding his injuries. (Dkt. No. 51 at 11.) The seriousness of Johnson's injuries cannot be objectively discounted merely because he cannot, at this stage of the proceeding, identify their cause. *See, e.g., Johnson v. Lewis*, No. 404CV0058DFHWGH, 2005 WL 2373732, at *4 (S.D. Ind. Aug. 30, 2005) ("The court finds that unexplained bleeding should not be ignored and that a reasonable person would recognize that such symptoms require medical attention."). Second, Defendants argue that because Johnson did not suffer from other injuries, such as breaking or fracturing a limb, his injuries cannot be considered to be objectively serious. (Dkt. No. 51 at 11.) While the Court recognizes that the injuries Defendants allude to are likely objectively serious, this contention does nothing to combat the Court's finding that rectal bleeding, especially in combination with Brown's suffering from great pain, is not an injury of a similar ilk. Finally, Defendants contend that Plaintiff cannot allege that the medical condition arose "as a result of his fall witnessed by the Defendant Officers." (*Id.*) Yet, taking all reasonable inferences in Johnson's favor, his allegations that he suffered great pain upon falling and experienced rectal bleeding only after his fall permit the inference, at this early stage of the proceeding, that the fall caused his injuries.

Turning to the subject prong, however, Johnson fails to allege sufficient facts to state a claim. The crux of Johnson's claim is two-fold: that the Officers were deliberately indifferent, *i.e.* disregarded a substantial risk of harm when they failed to assist Johnson to feet (instead taunting him) and when they subsequently failed to call for medical personnel on his behalf. However, such facts are insufficient for a number of reasons. First, Johnson does not allege that he was left on the floor, unable to get up, for a substantial, unconstitutional amount of time. *See,*

12

*e.g., Boyd v. Lane*, No. 3:13 CV 814, 2014 WL 554590, at *4 (N.D. Ind. Feb. 12, 2014) (holding that officers ignoring a plaintiff, who was unable to get to his feet for ten minutes "does not demonstrate that either officer was deliberately indifferent."). Second, as Defendants point out, despite being deplorable, verbal harassment on the part of prison officers "does not constitute a cruel and unusual punishment." *DeWalt v. Carter*, 224 F.3d 607, 612 (7th Cir. 2000). Third, taking as true Johnson's allegation that the Officers delayed in calling medical personnel, Johnson nevertheless saw Nurse Mitchell that same day. (Dkt. No. 27 at ¶ 36.) As Johnson fails to provide a timeline of the delay, much less allege that the delay was a substantial one, he has failed to make the requisite showing of deliberate indifference. *See Langston v. Peters*, 100 F.3d 1235, 1240 (7th Cir. 1996) (a delay constitutes an Eighth Amendment violation only if the delay was "objectively, sufficiently serious to constitute the denial of the minimal civilized measures of life's necessities.") (internal citations omitted).

Accordingly, the Court dismisses Count II in its entirety and Count III as it relates to the Officers.

**C.    Count III – Dart's Policy or Practice Related to Improper Care**

In the remaining portion of Count III, Johnson alleges that Sheriff Dart "was responsible for allowing a policy or practice to exist pursuant to which detainees did not receive proper medical care or treatment." (Dkt. No. 27 at ¶ 50.) Defendants move to dismiss on the grounds that Dart is not responsible for medical care at CCJ, and that in any event, Johnson fails to state a claim under *Monell*.

Turning to the first issue, the Court holds that Dart is responsible for medical care within the CCJ. "It is 'the responsibility of the Sheriff, as the official who controls and supervises Cook County Jail ... to ensure that the medical needs of inmates are adequately met, regardless of

whether, as a practical matter, medical tasks were actually carried out by the Sheriff or delegated to some other agency or entity.'" *See, e.g., Evans v. Dart*, No. 09 C 4853, 2015 WL 5675012, at *3 (N.D. Ill. Sept. 24, 2015) (quoting *Bramlett v. Dart*, No. 14 C 5939, 2015 WL 4148711, at *2 (N.D.Ill. July 9, 2015)). Defendants' citation to *Harrison* is unpersuasive as the Court in that case granted summary judgment against the plaintiff only after concluding that no reasonable jury could have found that "Dart's office…*contributed* to Cook County's alleged deliberate indifference to Harrison's various ailments." *See, e.g., Harrison v. Cty. of Cook*, No. 08 C 3202, 2011 WL 4036115, at *8 (N.D. Ill. Sept. 12, 2011) (emphasis added). Here, Johnson sufficiently alleges that Dart espoused a policy or practice that led to his inadequate medical care. (Dkt. No. 27 at ¶ 50; Dkt. No. 44 at 9.)

Turning to the *Monell* claim, to survive Defendants' motion for dismissal, Johnson must set forth sufficient facts to allege that "Dart was deliberately indifferent to one of his objectively serious medical needs and the deliberate indifference was the result of a Sheriff's Office custom or policy." *See, e.g., Evans*, 2015 WL 5675012, at *3. As discussed above, Johnson meets the objectively serious medical need standard, particularly as he alleges that he continued to pass blood and complain about pain from at least October 6, 2013 to February 2014. (Dkt. No. 27 at ¶¶ 37-48.) Defendants' attempt to characterize the rectal bleeding, inability to sleep, and nausea as nothing more than simple pain is unavailing. Moving to the subjective prong, taking in account the totality of his medical care, Johnson has sufficiently alleged that he was treated with deliberate indifference. *Gutierrez v. Peters*, 111 F.3d 1364, 1375 (7th Cir. 1997) ("As with an Eighth Amendment claim based on the conditions of confinement where we examine the totality of the conditions… we must examine the totality of an inmate's medical care when considering whether that care evidences deliberate indifference to his serious medical needs.") (internal

citation omitted). While it is true that Johnson saw nurses and doctors immediately following his injury and at a consistent rate afterwards[6], taking all alleged facts to be true, in all of those visits, Johnson only received two ibuprofen tablets followed by a prescription for the same. (Dkt. No. 27 at ¶¶ 44, 47.) While the fact that Johnson was granted access to medical personnel at a consistent rate is not immaterial in the Court's analysis, based on the facts alleged, there was a "chronic refusal" to meaningfully treat Johnson's ailments and the pain that they caused. *See, e.g., Evans*, 2015 WL 5675012, at *4; *see also Gutierrez*, 111 F.3d at 1375 (finding isolated occurrences of neglect did not meet the Eighth Amendment standard where prisoner received "some sort of treatment for his cyst on approximately nine occasions," including "pain medicine, antibiotics, and sitz baths."). While perfect or even reasonable treatment is not required, *see e.g., Smith v. Alvarez*, 898 F. Supp. 2d 1057, 1065 (N.D. Ill. 2012), the alleged lack of meaningful care here is sufficient to evidence deliberate indifference.

Turning to the policy and practice issue, Defendants argue that Johnson has not alleged sufficient facts to show that Dart had notice regarding Johnson's allegedly inadequate medical treatment and that, in any event, Johnson's lone experiences are insufficient to support a finding of a policy or practice. (Dkt. no. 50 at 12-13.) While it is true that Johnson's experience in a vacuum would likely have been insufficient to support an allegation of a policy or practice, *see Palmer*, 327 F.3d at 596, the facts within the DOJ Report do lend substantial credence to Johnson's claim that there is a systemic failure in providing adequate medical care for inmates. (*See* Dkt. No. 44 at 10-11 (citing Report).) The factual similarities between the issues directly addressed in the Report, such as inadequate health assessments and inadequate acute care, and Johnson's allegations here support a finding that Dart was on notice of such issues. *See, e.g.,*

---

[6] Johnson alleges that he saw nurses and doctors on October 6 (the day he injured himself), October 7, October 8, sometime in mid-October, in November 2013, in January 2014, and in February 2014. (Dkt. No. 27 at ¶¶ 37-48.)

*Evans*, 2015 WL 5675012, at *4 n. 9 (Court relying on DOJ letter "to show that Dart had notice of the DOJ's conclusions" regarding inadequate dental care).[7] Although additional facts may be required for this claim to survive further in this proceeding, Johnson has plead sufficient facts to survive Defendants' motion to dismiss. *Pyles*, 771 F.3d at 410. As such, the Court denies the Defendants motions to dismiss in relation to Johnson's *Monell* claim in Count III.

## CONCLUSION

For the reasons set forth above, the Defendants' motions to dismiss are granted in part and denied in part.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: 4/8/2016

---

[7] To be clear, the Court rejects relying on the Report in regards to Count I because the Report does not directly touch on inadequate lighting *in* showering areas. As such, the Report would not have provided Dart notice of the circumstance that led to Johnson's injury. However, the Report addressed issues related to the inadequate medical care, many of which the Johnson himself experienced, in detail, and thus did put Dart on notice.